Bailey, Judge.
Statement of the Case
Jason Bokori (“Bokori”) collided with Jasmina Martinoski’s (“Martinoski”) leased car, totaling it. Insurance payments covered Martinoski’s medical expenses and a portion of the cost of her totaled vehicle, but a balance remained on the lease. Mar-tinoski sued Bokori for the balance in small claims court, and the court entered *443 judgment in her favor. Bokori now appeals.
We affirm.
Issue
Bokori presents one issue for our review, whether the small claims court committed clear error in determining fair market value and awarding damages.
Facts and Procedural History
On December 22, 2013, Bokori and Martinoski, driving separate vehicles, were involved in a collision. Martinoski’s leased 2013 Toyota Corolla was totaled in the accident.
Martinoski had leased the vehicle with financing through Toyota Financial Services (“Toyota Financial”) just five months prior to the collision. The balance on the financing agreement was $22,676.52 at the time of the collision. Martinoski’s insurer, Nationwide Mutual Insurance (“Nationwide”), paid Toyota Financial $17,530.44 to purchase the totaled vehicle. After that payment, Martinoski still owed $5,146.08 under her vehicle financing agreement, an amount Martinoski believed would be paid by Bokori’s insurer, Progressive Insurance (“Progressive”). However, Toyota Financial pursued collection of that amount and' late fee charges against Martinoski when Progressive did not pay the difference.
Martinoski sued Bokori and Progressive in small claims court to recover the amount she still owed under the lease agreement plus the late fee charges and court costs. In her notice of claim, Marti-noski alleged that Bokori was responsible for the accident, and that he and Progressive owed her the balance remaining on her lease plus late fees and court costs totaling $6,000.00.
During cross-examination of Marti-noski, Progressive’s attorney tendered Nationwide’s market report prepared by C.C.C. Valuescope Claims Services. However, there was no proponent for the document, and Martinoski did not recognize it. The small claims court, while acknowledging there was no proponent for the exhibit, admitted the document without objection. The report shows the date of the accident, that Martinoski was the lessee of the totaled vehicle, and correctly identifies the vehicle identification number for the Corolla. The report, which was used in negotiation between Progressive and Nationwide in reaching a settlement on what would be paid to Toyota for Martinoski’s car, concludes that after conducting research into the local market, the fair market value of the vehicle at the time of the accident was $17,312.00.
The small claims court entered judgment in favor of Progressive because there was no contractual relationship between it and Martinoski, and, as such, Martinoski could not sue Progressive directly. The court then found Bokori was completely responsible for the accident. The trial court recognized that it had admitted into evidence the report used by Progressive and Nationwide in their negotiations as to the value of Martinoski’s vehicle. However, the trial court concluded that “with no proponent for it, I’m not satisfied that it’s sufficient to [establish fair market'value].” Tr. pp. '30-31. Having also determined that Bokori failed to establish any affirmative defense, the trial court entered judgment against him in the amount of $5,446.08— the balance of Martinoski’s indebtedness on the lease, her late fees, and court costs.
This appeal ensued.
Analysis and Decision
 Bokori brings his appeal after a negative judgment against him in the small claims court. We review a small claims court’s judgment for clear error. Bonecutter v. Discover Bank, 953 N.E.2d *444 1165, 1171 (Ind. Ct. App. 2011), trans. denied. “[E]xpeditious resolution is essential to the efficacy and attractiveness of the optional small claims process.” Fortner v. Farm Valley-Applewood Apartments, 898 N.E.2d 393, 398 (Ind. Ct. App. 2008).
 Here, Martinoski did not file an appellee’s brief, and thus we may reverse upon a prima facie showing of reversible error—but even so, we still may not reweigh evidence or reassess witness credibility. Heartland Crossing Found., Inc. v. Dotlich, 976 N.E.2d 760, 762 (Ind. Ct. App. 2012). In his appeal, Bokori argues that Martinoski’s claim rests on a “mistaken legal theory” (Appellant’s Br. at 5), that Martinoski’s proper remedy for loss of the vehicle had already been provided, and that the trial court erred when it found otherwise.
 “It is a well-established principle that damages are awarded to fairly and adequately compensate an injured party for her loss, and the proper measure of damages must be flexible enough to fit the circumstances.” Bader v. Johnson, 732 N.E.2d 1212, 1220 (Ind. 2000). “In tort actions generally, all damages directly related to the wrong and arising without an intervening agency are recoverable.” Id.
 The general rule is that a plaintiffs compensatory damages for property destroyed by a tortfeasor shall be the fair market value of the property at the time of loss. Ridenour v. Furness, 546 N.E.2d 322, 325 (Ind. Ct. App. 1989). “Fair market value is defined as the value a willing seller will accept from a willing buyer for a good.” Warrick Cty. v. Waste Mgmt. of Evansville, 732 N.E.2d 1255, 1258 n.1 (Ind. Ct. App. 2000). A plaintiff must bear the burden of proving the fair market value of the property. Campins v. Capels, 461 N.E.2d 712, 719 (Ind. Ct. App. 1984). Evidence of fair market value may include the plaintiffs testimony, the price paid upon purchase, testimony from skilled witnesses, and other competent forms of evidence. See, e.g., City of Carmel v. Leeper Elec. Servs., Inc., 805 N.E.2d 389, 394-96 (Ind. Ct. App. 2004) (accepting as competent but not dispositive evidence testimony concerning the purchase price of land taken in a condemnation), trans. denied; Wiese-GMC, Inc. v. Wells, 626 N.E.2d 595, 599-600 (Ind. Ct. App. 1993) (remanding to the trial court for recalculation of damages from evidence properly before the trial court), trans. denied. Nevertheless, a plaintiff should not receive a recovery that constitutes a windfall. Dado v. Jeeninga, 743 N.E.2d 291, 294 (Ind. Ct. App. 2001). However, the plaintiff need not bear the burden of negating the possibility of a windfall; that burden falls on the defendant. Id. at 295.
 Here, Bokori argues that the trial court erred in awarding Martinoski compensation of $5,446.08, representing the difference between the total purchase price of the car, which was less than six months old at the time of the accident, and what Bokori argues is the fair market value [1]: the amount of money Bokori’s insurer and Martinoski’s insurer negotiated between themselves as a suitable measure of compensation to be paid to Toyota Financial Services for the destruction of the car. Put another way, Bokori argues what the fair market value is and which evidence the trial court should have relied upon, though he couches it as a legal issue.
The trial court was presented with several items of evidence: Martinoski’s *445 testimony about the recent purchase price of the vehicle in a retail transactional setting, documentation to that effect in the form of an acceleration statement from Toyota Financial Services, and a market value report used in settlement negotiations between the parties’ insurers. Assessing the evidence at the end of the trial, the court stated: “At the end of the day the question is whether or not the affirmative defense of free market value or fair market value’s been established; it hasn’t. Not under the case law I’ve seen.... I, I admitted it [the insurance valuation], but with no proponent for it, I’m not satisfied that it’s sufficient to get there.”[2] (Tr. at 30-31.)
Thus, the trial court heard evidence of fair market value and, acting within its role as fact-finder, weighed the evidence before it. The trial court concluded that Martinoski’s evidence of fair market value—taking the form of her testimony and the acceleration statement from Toyota Financial Services—was more credible than Bokori’s proffered evidence, which took the form of the valuation report used in settlement discussions by the parties’ insurers. The court’s determination of damages was within the range of evidence presented at trial, and whether Bokori’s evidence was worthy of credit was a matter within the trial court’s purview. That Bokori characterizes his position as a question of law is not determinative: his argument at bottom requests that we reweigh the trial court’s assessment of the weight and credibility of the evidence before it. We are not at liberty to do so. See Heartland Crossing Found., 976 N.E.2d at 762.
The dissent sees this differently. Noting that Martinoski leased the vehicle and accepted a personal injury-related settlement, the dissent would hold that Marti-noski incorrectly sought compensation for property damage to a car for which she was not entitled to receive any kind of payment. The dissent also argues that the negotiated amount Toyota Financial received was the fair market value for the destroyed vehicle.
 We might agree with the dissent were the evidence and arguments in this case other than what they are. The dissent’s argument that Martinoski cannot recover for damages related to a leasehold—something apparently akin to arguing that Martinoski lacks a claim for which relief can be granted under Trial Rule 12(B)(6)—is not an argument Bokori made at trial. And, because it is outside our role to advocate for a party, issues not raised by a party are waived. Perry v. Anonymous Physician 1, 25 N.E.3d 103, 105 n.1 (Ind. Ct. App. 2014), trans. denied, cert, denied. Here, Bokori has essentially conceded that Martinoski was entitled to pursue this claim. See Ind. Trial Rule 15(B) (providing that issues not raised in the pleadings but tried by express or implicit consent of the parties “shall be treated in all respects as if they had been raised in the pleadings”).
Thus, Bokori’s appeal focuses solely on the question of the trial court’s determination of fair market value. That Martino-ski was not the owner of the vehicle does not ipso facto preclude the trial court from hearing or crediting her testimony as to the value of the vehicle, just as Surely as *446 Martinoski not owning the vehicle did not preclude her from obtaining insurance. Simply put, she had a contractual interest in the vehicle’s use, and thus a financial stake in any resulting payout for damage to the vehicle. We are not at liberty to aid Bokori, a party represented by counsel in a small claims case, by creating arguments for him, and we are thus not at liberty to take the dissent’s path.
Nor are we at liberty to presume knowledge of the contents of any of a number of documents that might, had Bo-kori introduced them into evidence, have precluded a recovery. The record includes testimony concerning the existence of a lease and its term. But the lease document itself was not introduced into evidence, and thus we cannot properly rely on what it might say as introducing a bar to Martino-ski’s recovery. There is also no evidence about the extent to which some or all of Martinoski’s claims were subrogated either to Toyota Financial or her insurer. Marti-noski testified that she signed some form of a settlement agreement and received a relatively nominal amount of compensation for her personal injuries, but she was unable to testify to or explain any of the settlement beyond that. Rather, Martino-ski testified only that she was led to believe that Progressive would pay the entirety of the lease balance, and Bokori did not introduce a settlement agreement that might have served to preclude a claim by Martinoski by means of subrogation. Any of these might have yielded a different result at trial—but Bokori did not make such arguments or rely upon any of these documents.
We are left, then, to resolve the appeal with the evidence presented at trial—Martinoski’s testimony, the invoice from Toyota Financial that Martinoski introduced into evidence, and the market survey Bokori introduced into evidence— and the argument Bokori actually made on appeal, which focuses only on the trial court’s determination of fair market value. Bokori’s argument, cloaked as a legal question, actually challenges the trial court’s determination of weight and credibility: Bokori suggests as a legal conclusion that an insurance market value report, supported by no testimony to explain how it was generated or its assumptions, is determinative of value—even as Martino-ski provided testimony concerning the underlying purchase transaction for the vehicle and supporting documentation from Toyota Financial. Such an argument does not rise to the level of prima facie error required to obtain a reversal here, and its invitation to reweigh evidence is one we cannot take up.
 Bokori worries in his brief that flexibility in the measurement of market value would impose unreasonable damages. But the argument that Martinoski, as a lessee, could not provide evidence as to the value of the vehicle leads to a rule creating the possibility that lessees in the future could be subject to the whims of settlement discussions. Here, for example, the money paid to Toyota Financial was the result of a negotiated amount between two insurers. If the insurance companies had negotiated a settlement of $10,000, the dissent’s rationale would leave Martinoski with more than $12,000 in debt owed to Toyota Financial—not the nearly $6,000 at issue here—and with no apparent recourse. Moreover, the restriction Bokori suggests cuts against the relaxed eviden-tiary rules that advance the goal of efficient disposition of small claims cases. The fact finder is free to accept, reject, or determine a value within the range of values presented by the parties, Cox v. Matthews, 901 N.E.2d 14, 24 (Ind. Ct. App. 2009), trans. dismissed, but the plaintiff is not obliged to sit silently while her interest *447 is totally excluded from consideration by the finder of fact.
Had Bokori presented other arguments or infroduced other evidence, our result might have been different. But we are not bound to do a litigant’s work, and we are not at liberty to reargue the case or reweigh evidence. We therefore affirm the trial court’s judgment.
Affirmed.
Brown, J., concurs.
Barteau, Sr. J., dissents with separate opinion.

. A comparatively de minimis portion of the judgment was ordered to compensate Marti-noski for court costs and late fees associated with Toyota Financial Services’ collection efforts against her.

. The trial court's reference to an affirmative defense appears to refer to this Court’s decision in Dado. It was not incumbent upon Bokori to establish fair market value, though he was certainly permitted to offer such evidence. See Dado, 743 N.E.2d at 295. Rather, it was incumbent upon Bokori to establish that Martinoski would be compensated excessively if she received as fair market value the amount of money she had requested as damages. See id.